All right, good morning. You're on the second case that we're on docket. I don't know if you were watching the previous case, but this is an all Jackson, Mississippi panel. You are elsewhere, so you're missing out on a trip to Jackson. I apologize for that, other than a virtual trip. The second case of the day is United States v. Parkerson. Mr. Curtis. Thank you, Your Honor. I wish I could be in Jackson all these years. I haven't been able to have the privilege of arguing there. My name is Chris Curtis. I'm with the Federal Public Defender's Office, and I represent Mr. Parkerson on this appeal. Mr. Parkerson was charged with one count of failing to register as a sex offender. His advisory guideline advisory imprisonment range was 18 to 24 months. The district court imposed a sentence of 120 months, which the court identified as an upward variance and, of course, was the top of the statutory maximum sentence allowed. The district court gave essentially two reasons. Well, the reasons given for the upward variance was Parkerson's generally Parkerson's criminal history and his risk of recidivism. The district court relied heavily on two factors that the defendant objected to in the trial court. One factor was set forth in the PSR and was referring to an incident where Parkerson allegedly attempted to abduct his niece. This incident didn't result in any charges being filed and was not prosecuted, at least to this day. The second factor was an opinion given from a TDCJ doctor, a Dr. Dunham, who conducted a risk analysis back in 2014 before Mr. Parkerson was released from prison. In the pre-sentence report, the probation officer said that Mr. Dunham had actually reached the conclusion or given the opinion that Mr. Parkerson was a high risk of recidivism. However, when you looked at the report prepared by Dr. Dunham, you find that actually Dr. Dunham did not conduct any analysis or examination, I'm sorry, examination of Mr. Parkerson because Mr. Parkerson had declined to participate in the exam. Dr. Dunham was able to conduct what's called a static 99 risk evaluation on Mr. Parkerson. In fact, the static 99 came back with a low to moderate risk score for Mr. Parkerson. At the trial court, Mr. Parkerson objected to the finding in the PSR based on Dr. Dunham's opinion that he was a high risk and further pointed out that there was actually a static 99 test conducted which showed that Mr. Parkerson was a low to moderate risk of recidivism. The defendant also went ahead and took the additional step of attaching to his objection to the pre-sentence report literature that showed that the static 99 is a reliable test, it's a scientifically based test, and perhaps the only objective test that's available to determine the recidivism of a particular defendant. The problem with what happened in this case, and it was preserved, it was objected to and preserved, was the district court continued to rely on Dr. Dunham's opinion that Mr. Parkerson was a high risk. She basically said she gave equal weight to both Dr. Dunham's opinion. She said she wasn't going to pay attention to the doctor's opinion. Well, I don't think she went that far, your honor, and that I was about to get to that. She said that she was going to give equal weight to both the doctor's opinion and the static 99, which wasn't much. I think she said not much weight or wouldn't be much is what's in the record. The problem is though, if she considered that first opinion at all, it's got to have under the due process, due process requires that it's got to meet the sufficient indicia of reliability test in order to be considered as sentencing. It simply failed that totally. The doctor's opinion had no- Let me ask you whether in considering this arrest report that he contests the truth of, he has another story about it. Yes, your honor. It seemed to be the same incident. Could she take into account his lack of credibility in other situations and take into account his long record of being a sexual predator and saying, look, I just don't, I think that this report has credibility, even notwithstanding the fact that you challenge it because all of the conduct of your criminal conduct up to this point gives it credibility. Could she have justified her reasoning on that basis? Your honor, I think- Given what is it, sufficient reliability? I think not in this case. And here's why. Because the, first of all, the take a quote of the statement from the alleged victim. We don't have offense reports. We don't have a result of investigations, which the government relies pretty heavily in its case law in its brief. What we have is a statement from an alleged victim. And the only other thing we have in the record is under oath from the client or from the defendant, Mr. Parkinson, who says, gives a different story of what happened. And there needs to be, she absolutely, I think, can consider the reliability if she gets to the point, or the credibility of Mr. Parkinson, if she gets to the point where she's weighing the credibility of different pieces of evidence or different pieces of information. We don't get there because the government doesn't come forward and give us anything else. All we have is that third, fourth hand rendition of the alleged victim's statement in the pre-sentence report, which was properly objected to, was properly challenged. And we actually have a different version of what happened in that victim's. So it seems to me that it's, he is not even addressing the incident that she is referring to, but he doesn't deny that incident, but is saying that what happened relates to the that he was doing leather work, the fact that he was protesting, blowing the dope smoke in the face of the child. And it had no relation whatsoever to her picking him up at a store to take him home and driving to some obscure field and crossing a fence. I mean, they were not even the same story. I mean, she could take him into account. He's not even addressing what she is saying, but he is not denying. He said, this is another story. This is what happened. And they're not two same things. He's not even, he was just blatantly lying about it. Because he's certainly not saying anything about that, that incident. Yes, your honor. I understand that. But I think that point makes the point as well. What he says about the incident doesn't corroborate anything that she says in her statement. And in fact, it gives a different scenario. I do recognize exactly what your honor is saying and that, well, he doesn't specifically deny making her go to a field and getting out of the car and the things that are in her statement, but he doesn't corroborate any of it. And that we have objected to the reliability of that statement and all the government had to do. Of course, obviously the government could have brought the alleged victim in. That would have been the best way to actually address the credibility and what actually happened. But the government didn't have to do that. The government could have brought in, given the court the offense report, disclosed the entire offense report. What we have here is we have no context of how this case was investigated, whether there were any other witnesses to it, whether anything else was corroborated. Some of it was corroborated, right? I mean, he admitted to being with her. He admitted to having the box cutter to build on Judge Jolly's point, right? He did. Absolutely, your honor. And I think that's a totally different of events. He did. He gives entirely different version of events. And no, I'm not. I'm not saying that the judge had to believe what Mr. Parkerson said. I'm not saying the next question was wasn't the district judge entitled to weigh his credibility as against the report that Denise gave us as reflected in that police report. But before the judge can do that, before the district court can do that, your honor, the first, the report that's in the PSR has to be found to have an indicia of reliability. And we've got nothing in the face of an objection. If the judge doesn't have to make an analysis of the indicia of the reliability or the reliability of that particular piece of evidence just says, well, it's reliable. She gave a lot of details. It's reliable. The that's a violation of due process at that point. And all it is, and it also shifts the burden of production. And that's what's that's where that analysis breaks down. It doesn't break down, though, the Fifth Circuit case law and the process that's been established since 1987 in this court would work if the court followed the longstanding precedent of that. If it's unobjected to, and it's in the precedence report, that's that's good enough. That's an indicia of reliability. But once it's challenged and objected to, there needs to be something more. It doesn't mean that they have to bring in all the witnesses and have a mini trial or any of that. All it means is you've got to you've got to somehow establish the reliability of that initial statement. And that wasn't done in this case. And it's routinely not done. It's routinely skipped over by the district courts in the sentencing process, and the sentencing process will work and due process will be served. If we require in the face of an objection and a challenge that the reliability be established in some way, you can bring that you could bring the investigating officer into court. You could Curtis, let me ask you. I think what you're talking about may well be a fair, proper way to do it. I'm not sure that's what the law of the circuit is. Your briefing addresses that. Let me ask you a slightly different question. This does seem to have a fair amount of detail in it. It does seem to go beyond the case law. It talks about not relying on clusery allegations. I heard this from a DEA agent or whatever, and that appears PSR and district judge runs with it. This is the actual alleged victim making a report who doesn't exactly say that. It seems to me there's a different problem with this, which is, it's a complete speculation, but informed by this person's history, Parkinson's, of what was going on out there. He has an explanation, which Judge Borel didn't accept. But there's nothing on the face of this report on the woman who was scared. She felt she was hurt in some way, but that this was a sexual preliminary sexual offense is not really part of what's there. What do we do with that? What does that fit under that? You have to, I mean, there's circumstantial evidence of something in light of his conduct in other situations. So what do we do with that? Well, and again, I think that's an excellent question. That is the actual quote of the sexual assault that occurred. That's clear from what's just in the pre-sentence report. But I think that adds to my argument of why, or my position of why, when you've challenged that, you need to, you've got to submit information to base that conclusion on that has a sufficient reliability. Due process requires it. And what I'm getting at here is we do in a sense have a conclusory, we're operating on conclusions to affect this upward variance, this drastic upward variance of a hundred months from a potential sentence of 18 to 24 months. We have a conclusion that he's recidivating again, that he was about to commit another one of these acts. And the information that we have, even if the court's allowed to just accept that, doesn't establish that, doesn't establish it at all. And it could be cured, plain and simply, it could be cured by just bringing in the investigating officer of that 2016 incident. That's all you have to do. If you're the government, it's just bring the officer in to say, well, this is, I investigated this. This is what I found. Hearsay is admissible. He could tell what he got from interviewing other witnesses. He could disclose why the charges weren't brought. He could disclose why the case wasn't prosecuted. And of course, that obviously could weigh heavily on the credibility of the alleged victim to start with. But there is a problem there that you're reaching a conclusion that's not even established by those bare facts that are in that quote in the pre-sentence report. And so that causes a problem. It's a problem that could be solved, though, and could be solved easily. And I think the court can follow its precedent that goes back to 1990 and beyond. But starting in my brief, it starts in 1990, I believe, is the earliest case that I've gone to. If you follow the true binding authority in this circuit, then once that's been challenged, the government has to do more than just sit on the pre-sentence report. And the government does it over and over and over again in this district. They just sit on the pre-sentence report, and they'll come in and further establish the reliability, which puts the burden, shifts that burden to the defendant to have to disprove something that they don't even have. We don't have the detective. Wait a minute. Are you arguing here for us to adopt a broad rule that would apply to a general practice of the U.S. Attorney's Office? I think so. I think I am, Your Honor. And how would you articulate that rule? Thank you. The rule is, and I think it's already been articulated in the binding precedent. The rule is that once, if you're relying on a fact in the pre-sentence report, once that's been challenged by an objection, then the government has to do more. They've got to bring something in to show that that information is reliable, be it an offense report, which they could have done in this case. They could have just introduced the offense report, be it the investigating officer or be the witnesses to the offense itself. They can prove it that way. They can do that, but they don't have to go that far. So it's a pretty simple solution, and I think it's a solution that's already provided for under this court's precedent. Thank you. All right, Ms. Williams, we'll hear your response to all this. You can proceed. May it please the Court, Christina Williams on behalf of the United States. Does your office need us to articulate a new rule to apply to your office to keep you in reign? Respectfully, Your Honor, I do not believe that's necessary. I think the case law is clear that the defendant has the burden to produce information to rebut the PSR. And yes, the information in the PSR must be sufficiently reliable, which in this case, consistent with this court's precedent, it simply was reliable. Ms. Williams, let me ask you before you move on from that, is our case law to the extent, Mr. Curtis is incorrect, that the real binding original precedent says something contrary, but accepting recent precedent, are we out of step with most other circuits or did you pursue that? It's suggested in the briefing that other circuits do sort of follow what Mr. Curtis is urging. There are some circuits that do follow what he's urging, but there are a significant number that follow this court's case law. And the question for this panel is what is the law in the Fifth Circuit? And the law in the Fifth Circuit... It's the question for us now, the question for an in-bank court is whether this is the proper rule or not for whatever reason. I'm just asking you to reflect on that with me and not cut quite to the chase so much. But you have to answer, did he say that other circuits are following the rule that he's urging? So tell me why his older cases are really not precedent and the more recent ones, the contrary precedent and the more recent ones are correct. Well, the court's precedent, as I understand it, is that the PSR and the facts relied on therein must just be reasonably reliable and have sufficient indicia of reliability. And this court has several times in Fuentes and in Harris, namely, held that an offense report that is recited in a PSR is sufficiently reliable and that that goes further than the bare arrest record that this court has disapproved of. And here we have... Is that true where the offense report is directly challenged and contradicted by the testimony of the defendant? I would say that that is still true, that it meets the burden of being sufficiently reliable and then the defendant must put forward evidence to show that it's materially unreliable. But here there's... He did articulate his own story about it. I mean, well, as I said earlier, I mean, it seems like it's two ships passing at night. I mean, they're not even talking about the same damn thing. Well, he didn't put forth his own story really until his allocution, his response to the PSR and his objections. And then even before his allocution, he argued that it was unreliable and that that wasn't what happened, but he didn't put forth any evidence, including even just his own version of events until his allocution after the district court had ruled on it. And his allocution, his story of events, to the extent that there is any overlap at all, it actually corroborates the victim's report. And he admits he was with her on that day. He admits he has a box cutter and he doesn't put forth any information to show that it's... To materially rebut that. He could have done discovery himself and put forth information about why that didn't turn into an arrest. He could have called the victim as a witness and he simply didn't do that. All we have is his argument and PSR objections and it's sentencing that this is unreliable. And then finally in his allocution after the district court has ruled, he attempts to give his version of events. So to the extent that that can be considered rebuttal at all, the district court then was faced with, as the panel recognized earlier, weighing the credibility of the victim's report and of Mr. Parkerson's story. And in its capacity as the fact finder and the ultimate arbiter of credibility, deciding that the 2016 report was more reliable than the story he was giving. Ms. Williams, how do we get from the 2016 report what offense he was trying to commit? So what we know there is the victim's story. And indeed, there's nothing in that that directly states that he committed an overt sexual act towards her. However... Knowing who Parkerson was, and we get it in the PSR and it follows some other sexual offenses that are described, this is a freestanding allegation. There's nothing in there that ties it to a sexual offense. One must use imagination. Well, I would respectfully say not necessarily imagination. First of all, this isn't a situation where the only thing the district had in front of it was the offense report. It has his history of two rapes with intermediate periods of incarceration. Between that, he gets out, he commits again. And then what we also know is that he offers no other explanation. He doesn't say, well, we were going to this field together because my family owned the land and we had to check on it. He doesn't say we were going to give him an explanation. What reasonably follows from what his niece said in this report, or Heather Wright, this is his niece saying this, something about money. And so they're going to collect this money and they're walking towards a fence. I mean, that's the only particular tie-in to the first part of the report. But it's starting to get a little bit isolated for the niece and she makes a run for it. So I would say that as one possible explanation of what was going on, there are other possible explanations of what was going on. What does Judge Borel need? Did she need to decide that this is evidence of sexual, an incipient sexual offense? Or is that even necessary? Because it doesn't seem to be pretty speculative that it was a sexual offense. It does seem like there was some threatening effect of what was going on. Well, he was certainly engaging in conduct that threatened her, that scared her. And then we also know from the offense report that it scares and threatens her enough that she calls her mom. And her mom actually reports it to police and that once she decides to leave to get in the car, he chases her. So there's something going on besides they got to the middle of nowhere and had a disagreement about which path to take. And so Judge Borel was certainly within her discretion in looking at his prior history and saying, even if we give very little weight at all to the 2016 offense, that he is a twice convicted individual of aggravated sexual assault of two rapes. He serves two prison sentences. The first is two years. The second is 10 years. He gets out of prison. And not only is there this 2016 assault allegation, which we believe is credible evidence, but he fails to register as the sex offender. So he's clearly not come out of prison with the message of deterrence and abiding by the law. I want you to explain the evidence to me. As I look at the PSR, he has the 88 and the 91 events of convictions for whatever years those events were. There is no other sexual offense, new sexual offense out there other than violating SORNA. Is that what this evidence is? Or was there some other offense after the one for which the 91 assault was 91? Is there no offense after 91 other than registration offenses? That is the only one he's been convicted. Setting aside 2016, whatever that was, I mean, whatever the event is, there's no reported sexual assault or attempted assault after 91, except for this, whatever you want to make of the 2016 report. There's no conviction after the 1991. There's no even allegation, is there, other than the 2016 event? No. That is the only allegation that's in the record. So it's not just conviction. It's not even an allegation. I mean, I'm not dismissing this. This is serious stuff. And Judge Boyle made a careful decision on it, but I'm just making sure I know what the evidence is. It's the government's position that that's an allegation of certainly assault. And then, you know, the Judge Boyle looking at the circumstances and listening to the defendant and reading the victim's report believed that that was on its way to another aggravated sexual assault. But even before that, I think it's important to note that Parkerson has seven prior convictions. And the first one is actually false imprisonment reduced from assault to commit rape. He's got several other convictions after that. So he's certainly not even a choice offender. He has multiple others, as well as 16 arrests, several of which are related to sexual assault. So he's got a long history that she's looking at. And what she's seeing is this individual, at minimum, has shown that even once sentenced and serving time for a rape, he comes out and he does it again. So we know it's at least happened again. And then we have what she views as a credible report that he's on his way to commit another one. And she's very concerned about the need to protect the public and deterrence. And so she determines that the 120-month sentence is necessary. I do also want to address the TBCJ evaluation. As the panel noted earlier, I think the District Court is quite clear that it gave minimal, if any, weight at all to this evaluation. And instead, the District Court was focused on his recidivism as evidenced by just his clear criminal record. And to the extent that there's an argument that the government was required to put forth the actual offense report or put forth a victim on the stand or even a witness, this court is consistently affirmed without those being the case. What would we do with this case, from your point of view, if we decide that the incident with the niece was unreliable information? Do you concede that reversal would be required? Yes. If the court determines that is procedural error, then it need not go to the substantive reasonableness challenge. But here, there is no procedural error. So the court can go ahead and proceed to both questions. So if there are no further questions, the government will rest on its laurels. Thank you. All right. A little bit early. Are you ready, Mr. Curtis? Yes, Your Honor. Thank you. I first wanted to address, go back to this court, what I contend is this court's binding precedent. I've cited a case from 1993, U.S. v. Elwood, and I quoted, when confronted with an objection to the findings in the PSR, the party seeking the adjustment by a preponderance of relevant and sufficiently reliable evidence. Again, this is a problem that is simply solved, but it's a problem that's ongoing, and it's a problem that results in cases where a person who's facing an advisory imprisonment range of 18 to 24 months gets a statutory maximum sentence of 120 months without any real reliable fact-finding in the district court because the government just sits on the statement in the PSR. They do it over and over and over again. In this case, I contend that all the government had to do in this particular case was get the offense reports and submit them to the court and submit them to probation and let everyone see the full context of what happened. Because as... Mr. Turner, let me ask you about Elwood. It seems to me two things are going on. One is, when does the burden arise and then on whom is that burden? Both Elwood and the precedent on which it relied, Patterson, from, I don't see the date right now, oh, 92, previous year, really were much thinner information than we have in the present case. One was in the PSR, the probation officer says, in discussing the relative roles of the defendant with the government and the DEA, we came to the conclusion that enhancement applies. That's conversation among people without any known facts as to what made them reach that. That's Elwood itself. The case on which it relied was something similar. Information the AUSA got, well, we don't know what that information was, but some recommendation was made on that. Here, we have a very specific, I mean, I don't want to overstate it, but we have a detailed allegation by a named individual, at least we know who it is. And that's what Elwood said created this obligation for something else. It seems to me it's not so much who has the burden, it's if you don't have anything in the first place and you can't use it. And so if this was all the government had and if it's conclusory in the way that Elwood said, they need something else. But you're trying to create a new rule for the circuit that says when this contest is made and the defendant says this isn't good enough, so some sort of automatic obligation on the part of the government to present more that may be consistent so long as there's a challenge may be consistent with other circuits. But I don't read Elwood that way. Help me, if you want to win on this, at least help me understand what your viewpoint is. Thank you, Your Honor. I think there are cases where what's in the pre-sentence report is sufficient to establish the initial reliability and just a mere boilerplate objection is not going to tee this up, if you will. That situation would be, for example, in this case, not to use a far-fetched hypothetical, but this particular case, if we had the context, not just the statement, which by the way, as you've pointed out, Your Honor, not just the statement that, oh, we went to a field and I got scared and I took off. And we had the context of the investigation, which another case, maybe Elwood, I think it's actually perhaps debate. There's been situations where the pre-sentence report actually says what the investigation, what the investigators told the probation officer. For example, if you used it in the context of drugs, if you objected, if the probation report said, well, there were 118 kilos of methamphetamine and the defendant objected to that and the probation officer went back and said, well, I called and interviewed the DEA chemist and the DEA agent, and here's the facts I got from them, and here's why it came to that result, then I think you're okay. But in this case, you don't have that. You don't have in the first instance, the probation officer saying, this alleged victim gave this statement, officers investigated it, talked to a neighbor who saw this happen or didn't see this happen, took a statement from Mr. Parkerson and here's his statement. If those facts are in the pre-sentence report, then the court can make an analysis of the reliability of that statement. What we have here is when you just have the statement in there, and it doesn't matter if it has the details that the statement has in it. I mean, in fact, the details are a little, they're a little fanciful and far from it. I'm sorry. I got carried away there. We appreciate the explanation from both of you. Take this case under advisement. We may see you both again on something else. Thank you, Your Honor. All right.